THE STATE OF OHIO *v.* ALEXANDER.

(Nos. C 84 TRC 41475 A, B, C —
Decided March 1, 1985.)

Hamilton County Municipal Court.

*Joseph T. Deters,* for plaintiff.
*W. Kenneth Zuk,* for defendant.

PAINTER, J. This matter came on to be heard on January 10, 1985, on defendant's motion to suppress his arrest as being in violation of the Fourth Amendment to the United States Constitution. The facts are basically undisputed.

Defendant, Thomas D. Alexander, was operating his motor vehicle on October 14, 1984, at approximately 8:20 p.m. in Winton Woods Park, which is in Hamilton County, Ohio. At that time, Hamilton County Park District Rangers were operating a "roadblock," stopping all vehicles passing a certain point upon the roadway inside Winton Woods Park. Defendant's vehicle was in a long line of automobiles being checked by the rangers. Sergeant Gregory T. Smith testified that the purpose of the roadblock was twofold: rangers were checking for motor vehicle permits, which are required to operate a vehicle in the Hamilton County Park System, and for possible intoxication of the operators of the ' vehicles. However, there was no testimony whatever that the defendant's vehicle was checked for a permit; and, it being quite evident that the procedure of checking a vehicle for a windshield permit would not necessarily involve talking with the operator, or even in fact stopping the vehicle, the court finds that this independent basis for the stop was not established by the state. Therefore, this case becomes a pure "roadblock" case.

When defendant's vehicle approached the roadblock, Sergeant Smith observed a plastic cup of what appeared to be beer in defendant's hand as he was operating the vehicle. The car window was open.

Sergeant Smith testified that defendant "was seated in the driver's side, his eyes were half closed, his head was drooped down * * *." Defendant had a strong odor of an alcoholic beverage about his person. The officer instructed defendant to pull his car off to the side of the road. When defendant did so he almost drove into a ditch. When asked to exit the vehicle defendant continued to sit in the vehicle with his head drooped down. Sergeant Smith had to reach in, turn off the car's engine and open the door for defendant, whereupon defendant stumbled exiting the vehicle. Sergeant Smith testified that, in his opinion, the defendant was under the influence of alcohol at the time of exiting the vehicle.

Defendant was then arrested and taken to the Greenhills Police Station for further testing.

### Opinion

This is a matter of first impression in Ohio. We have been cited no authority, and our independent research has discovered no previous Ohio case, involving use of a police "roadblock" to

apprehend individuals operating vehicles under the influence of alcohol.

Our research has uncovered that similar roadblocks have been found to be not violative of the Fourth Amendment in the following cases: *State v. Deskins* (1983), 234 Kan. 529, 673 P. 2d 1174; *Kinslow v. Commonwealth* (Ky. 1983), 660 S.W. 2d 677; *State v. Coccomo* (1980), 177 N.J. Super. 575, 427 A. 2d 131; *People v. Scott* (1984), 63 N.Y. 2d 518, 483 N.Y. Supp. 2d 649; and *Little v. State* (1984), 300 Md. 485, 479 A. 2d 903. On the other hand, the following cases have determined the roadblocks to be contrary to the Fourth Amendment: *State, ex rel. Ekstrom, v. Justice Court* (1983), 136 Ariz. 1, 663 P. 2d 992; *People v. Bartley* (1984), 125 Ill. App. 3d 575, 466 N.E. 2d 346; *State v. McLaughlin* (Ind. App. 1984), 471 N.E. 2d 1125; *Commonwealth v. McGeoghegan* (1983), 389 Mass. 137, 449 N.E. 2d 349; *State v. Smith* (Okla. Crim. App. 1984), 674 P. 2d 562; *State v. Olgaard* (S.D. 1976), 248 N.W. 2d 392. While some of the above cases turned on individual facts, the underlying principles are the same.

It is this court's opinion that *after* the stop at the roadblock, the officers had sufficient probable cause to arrest defendant. Therefore, the remaining issue is whether the roadblock itself was proper; that is, whether or not the use of a police roadblock, during which all vehicles are stopped and the occupants questioned as to the possibility of their being under the influence of alcohol, can be constitutionally supported.

It should be noted that Section 14, Article I of the Ohio Constitution is identical to the Fourth Amendment to the United States Constitution, which is, in any event, applicable to the states. *Mapp v. Ohio* (1961), 367 U.S. 643 [16 O.O.2d 384].

At the outset, it is unquestioned that a checkpoint or roadblock stop is a "seizure" within the meaning of the Fourth Amendment. *United States v. Martinez-Fuerte* (1976), 428 U.S. 543; *Delaware v. Prouse* (1979), 440 U.S. 648; *People v. Scott, supra*. The Constitution prohibits only unreasonable seizures. The question becomes, of course, whether the seizure is "reasonable."

"Reasonableness in this context requires the proper balancing between the privacy interests of the individual and the public interests of the state. The action of the police must be justified at its inception and be a reasonable response to the problem which it addresses." *People v. Torres* (1984), 125 Misc. 2d 78, 478 N.Y.Supp. 2d 771, at 774. We agree with the Indiana court that the roadblock procedure at issue in this case "lies at the very fringe of the fourth amendment." *State v. McLaughlin, supra*, at 1141.

To begin the investigation, we must first look to a line of Supreme Court cases which originally developed from border patrol efforts to curtail illegal immigration. In 1975, in *United States v. Brignoni-Ponce* (1975), 422 U.S. 873, the court ruled that roving patrol roadblocks (and roadblocks at random) were unconstitutional. However, in 1976, in *United States v. Martinez-Fuerte, supra*, the Supreme Court ruled that a fixed checkpoint by border patrol was allowable. The court made a distinction partially because of its belief that the intrusion on the rights of individuals is much less at fixed roadblocks than at roving, unannounced roadblocks, especially those late at night, which could certainly cause concern, surprise and alarm to lawful travelers.

As in many Fourth Amendment cases, the issue comes down to a "balancing test" between the rights of law-abiding individuals to go about their normal business free of government interference and/or harassment, and the legitimate interests of law enforcement in preventing certain types of behavior and in apprehending perpetrators.

There are many considerations involved, the most important of which, in the opinion of this court, are the following: (1) the amount of intrusion involved in the stop, (2) the lack of discretionary or selective stopping of individuals, and (3) the importance of the law enforcement goal to be achieved. We believe that this case must be decided pursuant to the above considerations.

The United States Supreme Court has provided only limited guidance. In the case of *Delaware* v. *Prouse, supra,* roving patrol roadblocks checking for licenses were held to be invalid. However, the court went on to state, "[t]his holding does not preclude the State of Delaware or other States from developing methods for spot checks that involve less intrusion or that do not involve the unconstrained exercise of discretion. *Questioning of all oncoming traffic at roadblock-type stops is one possible alternative." Delaware* v. *Prouse, supra,* at 663. (Emphasis added.) The court evidently felt that in allowing individual officers the unlimited authority to check random vehicles could certainly result in abuses and discriminatory treatment of citizens.

Being stopped by a policeman is, under the most favorable conditions, a frightening and stressful situation, even for the most law-abiding citizen. Law enforcement officers must be prevented from arbitrarily stopping vehicles absent probable cause, or at least *Terry* v. *Ohio* suspicion of criminal activity. (See 392 U.S. 1 [44 O.O.2d 383]. ) We must remember that the Fourth Amendment was designed to prevent arbitrary government interference with the lives of ordinary citizens. The courts of this land are charged with the responsibility of protecting the public from arbitrary and unreasonable governmental action. This court takes that responsibility very seriously. Cf. *State* v. *Snyder* (1984), 14 OBR 430, and *Cincinnati* v. *Morris Investment Co.* (1982), 6 Ohio Misc. 2d 1.

We simply do not believe that the governmental action was unreasonable in this particular instance.

In the instant case, *all* vehicles were stopped at an established checkpoint. Especially considering that this "roadblock" existed in a county park rather than, for example, on a deserted road in the middle of the night, we don't believe that the subjective intrusion was unreasonable. Also, a citizen enjoying a county park is less likely to be seriously inconvenienced by a short stop than a citizen carrying on other business on the highways in general.

An additional protection from an unreasonable intrusion is that the procedure involved is subject to judicial review. As in this case, the review powers of the court are involved by the filing of a motion to suppress. While we do not grant the motion, we commend defendant's counsel for recognizing the important issue involved and properly raising it for this court's determination. Too often the proper functions of the court and counsel are confused, as are the proper functions of law enforcement officers, prosecutors, and courts. This court would not hesitate to invalidate a roadblock which involved an unreasonable intrusion, or an unnecessary and arbitrary hindrance of the general law-abiding public.

We believe that the use of the roadblock here is "* * * a proper exercise of * * * [the government's] inherent power to limit in a very minor way the mobility of some of its citizens to save the lives and property of these same citizens and others." *People* v. *Torres, supra,* at 775.

As to the second consideration, lack of discriminatory treatment, the undisputed testimony is that all vehicles were being stopped, and each driver questioned. No one was made to get out of a vehicle unless there was a reasonable suspicion that he or she was under the influence of alcohol.

Therefore, we believe that this stop passes the "lack of discrimination" test.

There may certainly be instances in which a roadblock could be discriminatory. For example, the setting up of a roadblock outside a particular restaurant or tavern because the officers have some bone to pick with the proprietor thereof, or the exclusive use of roadblocks in particular sections of the city where minority citizens may dwell, are but two examples. Many more could be postulated. However, the roadblock in the case here at issue is not alleged to be in the retaliatory or discriminatory category.

As to the third consideration, the importance of the law enforcement interest is beyond question. Though the state presented no evidence on this point at the hearing on the motion, we believe we may take judicial notice, as did the court in *State* v. *McLaughlin, supra,* that the social and economic devastation caused by the drunk driver is great and the problem is one of the most pressing faced by courts across the country and by society in general. "The carnage caused by drunk drivers is well documented and needs no detailed recitation here." *South Dakota* v. *Neville* (1983), 459 U.S. 553, 558. To argue that the governmental interest in controlling drunk driving is less than overwhelming would be bizarre and feckless; we have heard no such argument in this case.

Many cases have considered the issue of whether or not the roadblocks are effective for the advancement of governmental interests involved. There is a great deal of controversy as to whether or not the roadblocks are effective in deterring drunk driving or in apprehending the drunk driver. A lengthy discussion is found in the *McLaughlin* case, and in the *Bartley* case, both *supra.* Both of those cases held the procedure unconstitutional because the state failed to demonstrate its efficacy, *i.e.,* whether roadblocks were more effective than the traditional means of apprehending the drunk driver. This court is not convinced by the arguments in either of those cases that the procedure is ineffective; we are not convinced, either, that it is a "solution" to the problem. There will, of course, never be a total solution to the problem, but, as in all law enforcement, "control" of drunk driving will be more or less; if roadblocks are even minimally effective, we will not prohibit them on a wholesale basis. We agree with the New York court in *People* v. *Scott, supra,* that "[t]he State is entitled in the interest of public safety to bring all available resources to bear, without having to spell out the exact efficiency coefficient of each component and of the separate effects of any particular component. * * * There being a reasonable basis for concluding that considering both its detection and its deterring effect, the DWI checkpoint procedure in question is a valuable component of the program to control drunk driving, we conclude that it is a sufficiently productive mechanism to justify the minimal intrusion involved." 63 N.Y. 2d 518, at 528-529, 483 N.Y. Supp. 2d at 654. While roadblocks may, in many instances, be almost impossible to accomplish and perhaps an inefficient use of manpower, and while there are not as yet sufficient study results to determine whether or not they are effective, we believe that the decision whether or not to use roadblocks is, at least at this point, more properly a decision for the executive branch, and not the courts.

### Conclusion

Because this court believes that the inconvenience to law-abiding motorists in being momentarily stopped is insignificant compared to the goal of deterring or apprehending the drunk driver, we are not willing to prohibit the use of all reasonable means toward that end, including the use of properly conducted roadblocks.

We believe that the roadblock in this case was properly conducted, and not an unreasonable seizure.

For all of the foregoing reasons, defendant's motion to suppress his arrest is overruled.

*Motion overruled.*