## State v. Graham
*[Cite as 8 AOA 398]*

*Case No. 57622*
*Cuyahoga County, (8th)*
*Decided November 1, 1990*

*John T. Corrigan, Prosecuting Attorney of Cuyahoga County and Leonard D. Hall, Assistant, The Justice Center, 1200 Ontario Street, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Elizabeth A. Cain, 7511 Detroit Avenue, Cleveland, Ohio 44102, for Defendant-Appellant.*

KRUPANSKY, P.J.

Defendant David Graham was indicted July 25, 1989 by the Cuyahoga County Grand Jury, Case No. CR-229044, on two counts, *viz.*, (1) trafficking in marijuana in violation of R.C. 2925.03, and (2) possession of criminal tools, to wit, a 1977 Oldsmobile vehicle in violation of R.C. 2923.24. Defendant pled not guilty and filed a motion to suppress evidence obtained from his person and vehicle which the police acquired pursuant to a roadblock set up at Russell Avenue in the City of Cleveland. After the trial court overruled defendant's motion to suppress, defendant waived his right to trial by jury; was tried to the court and found guilty on each count.

Thereafter, the court sentenced defendant to six months on each count to run concurrently, which sentence was suspended and defendant placed on one-year probation. Defendant timely appeals the trial court's denial of his motion to suppress the evidence. The state cross-appealed arguing the trial court erred in failing to impose a mandatory fine upon defendant pursuant to R.C. 2925.03(H) (3).

The following evidence was presented at hearing on defendant's motion to suppress:

Detective Michael White, an eight-year police veteran with eighteen months in the narcotics unit, testified that on June 17, 1988, he and his "squad" of detectives, consisting of many detectives on the 4:00 p.m. to midnight shift of the narcotics unit, conducted a roadblock. This roadblock was prearranged by his superiors in the area of Russell and Superior Avenues in the City of Cleveland. Detective White testified from personal experience that this area was a "very high" drug area, "many, many sellers on the street and in cars and numerous dope houses in the area." In the very recent past, before June 17, 1988 the date herein, there had been several shootings on the street including a homicide. Due to this activity, the narcotics unit had received "numerous bitter complaints" from residents regarding the open drug activity occurring on the street.

The roadblock had a twofold purpose as testified to by Officer Miller: to "[w]eed out the people *delivering the narcotics and try and slow the buyers from coming down also.*" (Tr. 12.) On June 17, 1988, several police cars were set up on the street in front of 1333 Russell. The roadblock functioned as follows per Detective White:

"As each and every automobile came down the street the detectives would stop each car, check the occupants and driver, and question their business in the area. The length of each stop varied with the occupants of each vehicle, their purpose and destination, and whether they lived on the streets."

Defendant's 1977 Oldsmobile was one of the vehicles stopped in the roadblock. Detec-

tive White testified he approached defendant's vehicle, leaned in at the driver's window and asked defendant's business in the area. While conversing with defendant in this manner, Detective White saw in plain view in defendant's left upper shirt pocket a plastic bag containing a green substance which he recognized as marijuana based upon his training, experience and numerous marijuana arrests.

Detective White removed the bag with marijuana from defendant's upper left shirt pocket after which all three of the Oldsmobile's occupants were told to exit the vehicle. The inventory of the vehicle prior to towing revealed a large plastic bag containing eight smaller clear plastic bags of marijuana under the driver's seat.

The defendant's sole assignment of error follows:

"THE ROADBLOCK AT WHICH APPELLANT WAS STOPPED WAS A CONSTITUTIONALLY UNREASONABLE SEIZURE, AND THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE OBTAINED AS A RESULT THEREOF."

Defendant's sole assignment of error lacks merit.

Defendant argues the police roadblock was an unreasonable seizure pursuant to the Fourth Amendment and, therefore, the evidence obtained therefrom is the fruit of an unlawful search and must be suppressed. Defendant's argument is unpersuasive.

In 1976, the United States Supreme Court unequivocally stated that a checkpoint or roadblock stop is a "seizure" for purposes of Fourth Amendment analysis.[1] *United States v. Martinez-Fuerte* (1976), 428 U.S. 543, 556; *Delaware v. Prouse* (1979), 440 U.S. 648.

In *United States v. Martinez-Fuerte, supra,* the Supreme Court held that a fixed checkpoint near the border to curtail illegal immigration of aliens did not violate the Fourth Amendment. The court distinguished *Martinez-Fuerte* from those cases held to impinge significantly on Fourth Amendment rights in which roving patrols searched vehicles at *random* for illegal aliens simply because the vehicles were in the general vicinity of the border. *Almeida-Sanchez v. United States* (1973), 413 U.S. 266; *United States v. Brignoni-Ponce* (1975), 422 U.S. 873. The Constitution prohibits only *unreasonable* seizures. *Martinez-Fuerte, supra.* The reason-

ableness of the seizure of a person at a roadblock that is less intrusive than a traditional arrest depends on a balance between the public interest and the individuals's right to personal security and liberty. *Brown v. Texas* (1979), 443 U.S. 47, 50-51. The recent decision of the United States Supreme Court in *Michigan State Police v. Sitz* (1990), 110 L. Ed. 2d 412, upheld the vitality of the three-pronged balancing test in *Brown* and applied said test to the facts in *Sitz* to determine that neutral fixed sobriety checkpoints were reasonable and constitutional.

The court in *Brown* stated the test as follows:

"Consideration of the constitutionality of such seizures involves a weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty." *Brown, supra,* at 51.

In the case *sub judice,* it is incumbent upon the court to apply the above test to the initiation of a roadblock or checkpoint in a high drug trafficking area for the articulated purpose of curtailing drug activity. Consistent with *Brown,* the first prong of the test requires an inquiry into the weighing of the gravity of public concern in reducing drug trafficking.

In *United States v. Mendenhall* (1980), 446 U.S. 544, the Supreme Court made the following observations. The deterrence of drug activity is of overwhelming public concern and interest. *Id.* Few problems affecting our youth today cause greater concern than the ever-escalating use and abuse of controlled substances. *Id.* The drug problem poses a serious threat to our entire society. *Id.*

The evening news bombards the airwaves on a daily basis with reports of drug "busts," drug murders and drug-related crimes. The profits involved in drug sales are unparalleled and the concern of society so enormous that the Supreme Court has postulated that, "[t]he public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit." See *United States v. Mendenhall, supra* at 561. Since 1980 the drug problem has not diminished, but rather has become more pervasive. Therefore, the first prong of the *Brown* test, i.e., the gravity of the public concern, is undisputed.

Furthermore, as part of the second prong of the balancing analysis of *Brown,* the "effectiveness" of the roadblock or "the degree to which the seizure advances the public interest" is evident. *Brown, supra,* at 422. One drug arrest out of possibly a number of short delays of law-abiding citizens tells the tale. A finite number of police responded to a community outcry and at least on one night made a difference in quashing the overt, open drug trafficking in one Cleveland neighborhood, thus sending a message to the criminals. *Id.* Comparing checkpoint or roadblock stops to the roving patrol cases, the Supreme Court dealt with the "subjective" potential for engendering fear or surprise in a law-abiding citizen by the roadblock stop as follows:

"[W]e view checkpoint stops in a different light because the subjective intrusion--the generating of concern or even fright on the part of lawful travelers--is appreciably less in the case of a checkpoint stop. In *[United States v. Ortiz,* [422 US 891 [454 L Ed 2d 623, 95 S Ct 2585] (1975)] we noted:

"'[T]he circumstances surrounding a checkpoint stop and search are far less intrusive than those attending a roving-patrol stop. Roving patrols often operate at night on seldom-traveled roads, and their approach may frighten motorists. At traffic checkpoints the motorist can see that other vehicles are being stopped, he can see visible signs of the officers' authority, and he is much less likely to be frightened or annoyed by the intrusion.' 422 US, at 894-895 [45 L Ed 2d 623, 95 S Ct 2585]. Martinez-Fuerte, 428 US, at 558, 49 L Ed 2d 1116, 96 S Ct 3074.

"See also *Id.,* at 559, 49 L Ed 2d 1116, 96 S Ct 3074. Here, checkpoints are selected pursuant to the guidelines, and uniformed police officers stop every approaching vehicle. The intrusion resulting from the brief stop at the sobriety checkpoint is for constitutional purposes indistinguishable from the checkpoint stops we upheld in Martinez-Fuerte."

*Michigan State Police v. Sitz, supra,* at 422. Therefore, the second prong of *Brown* has been met since the roadblock was effective.

Conversely, pursuant to the third prong of the test in *Brown* i.e., the severity of the interference with individual liberty, the measure of the "objective" intrusion on law-abiding motorists who are required to stop briefly as they enter a neighborhood is slight. See *Michigan State Police v. Sitz, supra,* at 421. Here, Detective White testified the location on the roadblock was determined by public outcry and disgust with a homicide, drug related shootings and open drug sales. (Tr. 10).

Detective White testified that *each and every* car was stopped for purposes of reducing sales and possibly deterring the drug buyers. Therefore, the police roadblock was not retaliatory or discriminatory but neutrally implemented. See, e.g., *State v. Alexander* (1985), 22 Ohio Misc. 2d 34, 37. The brief stop at a checkpoint is not a severe intrusion on individual liberty. *Brown, supra.*

Hence, the application of the balancing test in *Brown, supra,* weighing the separate factors, *viz.,* (1) the state's interest in curtailing or deterring drug sales; (2) the extent which this roadblock advanced that interest; and (3) the individual intrusion upon motorists who are briefly stopped reasonably weighs in favor of the neutral police program which briefly stopped *every* motorist entering the roadblock. *Alexander, supra,* at 37. Since the stop and seizure is "reasonable" it is consistent with the Fourth Amendment.

Defendant relies on *State v. Barcia* (1988), 549 A. 2d 491, for the proposition that roadblocks set up for the purpose of interdicting drug transportation are unconstitutional. Defendant's argument is unpersuasive.

The court in *Barcia* was faced with a roadblock which was established at four checkpoints for the purpose of detecting persons operating vehicles who were transporting controlled substances, especially "crack" cocaine, across the George Washington Bridge from New York into New Jersey, i.e., interstate. In *Barcia,* over 1,000,000 motor vehicles came to a complete stop as a result of the roadblock of which fifty-nine were ordered to the side of the road and searched, leading to the arrest of nine persons. The New Jersey court, applying a balancing test, found the *Barcia* roadblock interfered with the public's right of travel and the commerce clause and was *inherently unreasonable,* stating as follows:

"(9) The state action here under scrutiny again fails to meet federal constitutional muster because it imposed a burden on interstate commerce substantially greater than any benefit derived on account of the imposi-

tion, and because it isolated New Jersey from a problem common to all states in a manner which for several hours halted *all* commerce on one of the nation's busiest interstate thoroughfares. *See Philadelphia v. New Jersey,* 437 U.S. 617, 98 S. Ct. 2531, 57 L. Ed. 2d 475 (1978) (a state may not, absent congressional consent, isolate itself from a problem common to all states by impeding interstate commerce).

"***

"The discussion, *ante,* of balancing with respect to Fourth Amendment protection needs modification for Commerce Clause analysis. Notwithstanding the compelling state interest the State has in ridding its highways of motorists influenced by drugs or alcohol or transporting drugs, it may not, absent congressional consent, stop *all* commerce at a major interstate border in order to address that interest.

"Applying the foregoing federal constitutional principles to the facts in this case, it is clear that the total immobilization of vehicular traffic as set forth above--albeit on a Friday evening in mid-September--is a serious substantial restraint on interstate commerce vastly out of proportion to the putative benefits--the detection of nine drunk or drugged motorists--and one which only the Congress could authorize." *State v. Barcia, supra,* at 501.

Thus, it is readily apparent the roadblock in *Barcia* was "unreasonable" and interfered with both the public's right to travel and the commerce clause.

That is not borne out by the facts in the case *sub judice.* The roadblock at 1333 Russell and Superior Avenues established on June 17, 1988 did not substantially impact on the public's right to travel or the interstate commerce clause. The police targeted the area at the specific time and place based on *public outrage* and "numerous bitter complaints" over drug trafficking in the citizens' area. *Id.* Concomitantly, the police neutrally stopped *each* vehicle for only a short period. *Id.* Furthermore, there is no indication that those *not* wishing to enter the roadblock could not exit, turn around or remove themselves from the area to elude detection. See *Barcia* citing *State v. Kirk* (1985), 493 A. 2d 1271.

Therefore, defendant's reliance on *Barcia* is inapposite to the case *sub judice.* Applying the balancing test of *Brown* as articulated in *Michigan State Police v. Sitz, supra,* the neutral roadblock set up by the Cleveland Police based on public complaints and entailing only brief intrusions upon law-abiding citizens was reasonable and consistent with Fourth Amendment guarantees.

Since Detective White had a lawful justification for the intrusion of the roadblock, when he observed first-hand the clear bag with green vegetation in defendant's breast pocket, its owner's privacy interest in that item was lost. Detective White was justified in seizing the evidence pursuant to the "plain view" exception. See *Horton v. California* (1990), 110 L. Ed. 112 (holding "inadvertence" of discovery is not essential if items are in plain view); *Coolidge v. New Hampshire* (1971), 403 U.S. 443; *State v. Benner* (1988), 40 Ohio St. 3d 301, 308, *cert. denied,* 494 U.S. ___, 108 L. Ed. 962. The inventory search of the vehicle which necessarily followed defendant's arrest was also valid. *South Dakota v. Opperman* (1976), 428 U.S. 364; *State v. Robinson* (1979), 58 Ohio St. 2d 478, 480.

Accordingly, defendant's motion to suppress the evidence obtained was properly denied by the trial court and defendant's sole assignment of error is not well taken and overruled.

The state's sole cross-assignment of error follows:

"THE TRIAL COURT ERRED IN FAILING TO IMPOSE A MANDATORY FINE OF TWO THOUSAND DOLLARS UPON APPELLANT'S CONVICTION FOR TRAFFICKING IN MARIJUANA AS REQUIRED BY LAW."

The state's sole cross-assignment of error has merit.

The state argues that since defendant was convicted of a violation of R.C. 2925.03 (A) (2), the trial court, absent a showing of defendant's indigency, must impose a *mandatory* fine of two thousand dollars pursuant to R.C. 2925.03(H) (3). The state's argument is persuasive.

In accord with the trial court's decision finding defendant guilty of violation of R.C. 2925.03(A) (2), trafficking in marijuana, the court is obligated to implement the provisions of R.C. 2925.03(H)(3) which provides as follows:

"(3) If the offense is trafficking in marijuana and a violation of division (A) (2), (3), or

(4) of this section, or if the offense is trafficking in drugs and a violation of division (A) (2) of this section, the court shall impose a mandatory fine of two thousand dollars and, if the offender has previously been convicted of a felony drug abuse offense, the court shall impose a mandatory fine of four thousand dollars."

R.C. 2925.03(L) further provides that a mandatory fine shall not be imposed by the trial court if the defendant is indigent. *State v. Ball* (Feb. 15, 1990), Cuyahoga App. No. 57903, unreported.

"(L) No court shall impose a mandatory fine pursuant to division (H) of this section upon an offender who alleges in an affidavit filed with the court prior to sentencing that he is indigent band is unable to pay any mandatory fine imposed pursuant to that division, if the court determines that the offender is an indigent person and is unable to pay the fine."

See also, *State v. Porter* (July 19, 1990), Cuyahoga App. No. 57251, unreported, citing *State v. Petty* (June 9, 1987), Cuyahoga App. No. 52069, unreported (holding a discretionary fine imposed upon an indigent by the court is an abuse of discretion). The trial court failed to impose the mandatory two thousand dollar fine pursuant to R.C. 2925.03(H) (3). The record fails to indicate defendant filed an affidavit of indigency prior to sentencing which formally would have provided the trial court with notice defendant was indigent and unable to pay the mandatory fine." R.C.2925.03(L).

The record clearly indicates the court was aware of the fine which should have been levied against defendant when the trial judge, defense counsel and prosecutor interacted as follows:

"MR. HALL [Prosecutor]. Both offenses which the defendant was found guilty of are felonies of the fourth degree. However, the first count also carries with it a mandatory fine.

"THE COURT. Yes, sir.

"MR. HALL. Of $2,000. I just ask the Court to direct that fine to the Cleveland Police Department Law Enforcement Trust Fund.

"MR. BRADLEY [Defense counsel]. Your Honor, I would just like to say this, that also there are provisions that if he is indigent,

that that fine can be waived and *we may have* an affidavit of indigency presented to the Court. (Emphasis added.)

"THE COURT. Okay. Well, the Court will make a determination of that at the appropriate time.

"MR. BRADLEY. Thank you, your Honor.

"MR. HALL. May it please the Court, may the Court note that the defendant indicated that he worked for the County Board of Mental Retardation.

"THE COURT. I am well aware of that and we'll set sentencing for April 14th, 1989, at 9:00 o'clock in the morning and I will put a note in the file with regard to where the mandatory fine should be ordered in the event that the Court does not waive that fine. Very good." (Tr. 85, 86.)

The defendant testified that at the time of trial he was employed by Zircoa Industries and at the time of the offense he was employed by the County and worked for the County Board of Mental Retardation. Therefore, regardless of the defendant's indigency for purpose of appointed counsel on appeal, defendant was required by R.C. 2925.03(L) to file an affidavit of indigency to avoid the mandatory levying upon him of the two thousand dollar fine pursuant to R.C. 2925.03(H) (3). See *State v. Cravens* (1988), 42 Ohio App. 3d 69; *State v. Porter, supra,* at 9.

Since the record discloses defendant testified he was employed *full time* as a *machine operator* at the time of the sentencing hearing and defendant filed no affidavit of indigency prior to his sentencing, the trial court erred in failing to impose the mandatory fine set by statute. See also, *State v. Beasley* (1984), 14 Ohio St. 3d 74, 75.

Accordingly, the state's sole cross-assignment of error is well taken and affirmed. Even if the state had not crossappealed on this issue, this court would *sua sponte* rectify the erroneous sentencing of the defendant under the doctrine of plain error. Crim. R. 52(B); accord *State v. Beasley* (1984), 14 Ohio St 3d 74.

Judgment affirmed in part, and reversed and remanded in part for resentencing.

The trial court is ordered to impose the mandatory fine of $2,000.00 per R.C. 2925.03 (H)(3). In addition the trial court is ordered to review its entry dated March 13, 1989 and journalized by the clerk April 11, 1989 wherein it found defendant guilty on "count three"

of the indictment. As far as can be ascertained by this court, on the record provided, the indictment contained only two counts. If error has been committed by the trial court, the trial court is ordered to correct this journal entry *nunc pro tunc* under Civ. R. 60(A).

J.F. CORRIGAN, J., concurs.

PRYATEL, J., dissents.

PRYATEL, J., Retired, Eighth Appellate District, Sitting by Assignment.

PRYATEL, J., dissenting.

Respectfully, I dissent on defendant's assignment of error. I do not dispute the state's interest in curtailing or deterring drug sales nor do I disagree with (1) *United States v. Martinez-Fuersto* (1976), 428 U.S. 543 authorizing a *fixed* checkpoint near the border to control illegal immigration of aliens (2) nor *Michigan State Police v. Setz* (1990) 110 L. Ed. 2d 412 upholding neutral fixed sobriety checkpoints as reasonable and constitutional.

Here we are not given the number of motorists stopped on Friday, June 17, 1988 as they returned from (1) work (2) shopping for weekend food, etc. Aside from the one defendant, we have no information that any other has been apprehended. The defendant who was arrested for violation in "plain view" would have been just as accessible for apprehension by a narcotic detective if the defendant were walking down the street.

The first detective testified "from personal experience" that the area was a very high drug area, many, many sellers on the street and in cars and numerous dope houses in the area. Furthermore, the narcotics unit received numerous bitter complaints from residents regarding the open drug activity occurring on the street.

With all this information available, and the area localized and pinpointed, the police were assured of far more detection and apprehension by their direct intervention than by imposing a roadblock upon all the motorists in that area.

To attack the problem by roadblock is to postpone drug dealing for a day as well as delay detection. According to the second detective, their function was to stop each car, to check the occupant and the driver, to question their business in the area, to determine the purpose and destination and whether they lived on the street. This procedure could hardly be expected to elicit responses that would "weed out the people delivering the narcotics."

In this case the degree to which the seizure advanced the public interest through the apprehension of one reported violator based on the "plain view" doctrine, was disproportionate to the severity of the interferences with the individual liberty of the motorists in that roadblock. *Brown v. Texas* (1979), 443 U.S. 47, 50-51.

The total immobilization of vehicular traffic -- albeit on a Friday afternoon and evening (4:00 p.m. to midnight) in mid June-- was a substantial restraint out of proportion to the protective benefit -- the detection of one reported motorist--on a "plain view" possession of marijuana. *State v. Barcia* (1988), 549 A. 2d 491.

I would sustain appellant's sole assignment of error and enter final judgment in his behalf and affirm the state's sole cross-assignment of error.

---

[1] The Fourth Amendment to the United States Constitution is applicable to the states through the Fourteenth Amendment. *Mapp v. Ohio* (1961), 367 U.S. 643.