CITY OF CINCINNATI *v.* MORRIS
INVESTMENT CO., INC.

(No. 82 CRB 30918—Decided
September 2, 1982.)

Hamilton County Municipal Court

*Mr. Charles A. Rubenstein,* for plaintiff.

*Mr. Marc D. Mezibov,* for defendant.

PAINTER, J. This matter came on to be heard pursuant to a motion to suppress filed by defendant, Morris Investment Co., Inc. Defendant's motion seeks to suppress all evidence obtained as a result of a visit, on or about June 24, 1981, by one J. Doyle, a building inspector for the city of Cincinnati, to premises owned by defendant (an apartment building at 226 Loraine Avenue, Cincinnati). As a result of that inspection, numerous orders were issued by the Cincinnati Department of Buildings and Inspections. Upon defendant's alleged failure to comply with said orders, an affidavit was filed in this court charging defendant with violation of Section 1101-54 of the Cincinnati-Ohio Basic Building Code, a part of the Cincinnati Municipal Code.

According to the testimony elicited at the hearing on defendant's motion, it is undisputed that Inspector Doyle made entry onto premises of defendant for the purpose of making an inspection for compliance with the building code. It is also undisputed that Inspector Doyle did not have a warrant, nor was any evidence adduced that he was acting pursuant to a complaint of any of the tenants, nor was there any claim by the prosecution that consent for the search was obtained from defendant or any tenants of the apartment building. Testimony also showed that Inspector Doyle made entry into a vacant apartment in the building.

Instead, the prosecution relied on the facts that there were "common areas" in the apartment building and that there

1

were no posted "no trespassing" signs in the building and on the grounds, thereby, according to the prosecution, making a warrant unnecessary, because there was no expectation of privacy by defendant in the premises.

Also, the prosecution submitted that, under Section 1101-46 of the Cincinnati-Ohio Basic Building Code, such warrant of entry was proper. That section states as follows:

"1101-46-1 Right of entry: The employees of the department of buildings and inspections may enter upon the premises at any reasonable time in the performance of their duties in the enforcement of COBBC, except that no such employee shall enter a part of a building which is 'private' and occupied as such, as defined in Section 1101-02 COBBC, until he has shown his credentials to the occupant thereof and secured his permission to enter such private part of the building.* * *"

It is now established that health and safety inspections of this type are subject to the Fourth Amendment warrant requirements. *Torres* v. *Puerto Rico* (1978), 442 U.S. 465, 473. This is true despite statutory or administrative authority for inspection of private homes or businesses. Markus, Trial Handbook for Ohio Lawyers (2 Ed. 1982) 623, Section 366; *Camara* v. *Municipal Court of San Francisco* (1967), 387 U.S. 523; *See* v. *Seattle* (1967), 387 U.S. 541.

The premises involved here are residential, but are not the residence of defendant, a corporation. As to defendant, the premises are commercial. Certainly, however, the present situation is analogous to warrantless inspections of business premises, which have been enjoined as being violative of the Fourth Amendment. *Marshall* v. *Barlow's, Inc.* (1978), 436 U.S. 307. The Supreme Court in *Barlow's, Inc.*, at 323-324, provided the following rationale for so holding:

"The authority to make warrantless searches devolves almost unbridled discretion upon executive and administrative officers, particularly those in the field, as to when to search and whom to search. A warrant, by contrast, would provide assurances from a neutral officer that the inspection is reasonable under the Constitution, is authorized by statute, and is pursuant to an administrative plan containing specific neutral criteria. Also, a warrant would then and there advise the owner of the scope and objects of the search, beyond which limits the inspector is not expected to proceed. These are important functions for a warrant to perform, functions which underlie the Court's prior decisions that the Warrant Clause applies to inspection for compliance with regulatory statutes. *Camara* v. *Municipal Court*, 387 U.S. 523 (1967) and *See* v. *Seattle*, 287 U.S. 541 (1967)."

The city offered no testimony and provided no legal authority to support the proposition it advanced that merely by virtue of the nature of the premises owned and maintained by defendant, the Morris Investment Company does not possess a reasonable expectation of privacy in those premises, apparently thereby eliminating its standing to assert Fourth Amendment rights and privileges. Cf. *Rakas* v. *Illinois* (1978), 439 U.S. 128. The law on this point in the context of administrative searches is quite to the contrary:

"As this Court stated in *Camara* v. *Municipal Court*, 387 U.S. 527, 528, the 'basic purpose of this Amendment * * * is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.' *The officials may be health, fire, or building inspectors. Their purpose may be to locate and abate a suspected public nuisance, or simply to perform a routine periodic inspection. The privacy that is invaded may be sheltered by the walls of a warehouse or other commercial establishment not open to the public. See* v. *Seattle*, 387 U.S. 541; *Marshall* v. *Barlow's, Inc., ante*, at 311-313. These deviations from the

typical police search are thus clearly within the protection of the Fourth Amendment." (Emphasis added.) *Michigan* v. *Tyler* (1978), 436 U.S. 499, 504-505.

The facts elicited at the hearing on the motion to suppress established without contradiction that Inspector Doyle's entry was effected onto private property. Whether there are or are not common areas on the premises is really of no great importance for the simple reason that these areas are common only to tenants or their guests, not the public at large. Indeed, this is not a shopping center situation where, although the property in question may be privately owned, the premises themselves serve vital public and quasi-public functions.

Moreover, much the same, if not the identical argument was made in *Tyler, supra,* and dismissed by the Supreme Court as "not persuasive." *Id.* at 505. In that case, fire inspectors entered a multi-family dwelling place in order to investigate a suspected arson. The state unsuccessfully tried to convince the court that an entry to investigate the cause of a recent fire is outside Fourth Amendment protection because the occupants of the building have no individual privacy interest remaining in badly burned premises. The court deemed this view as contrary to common experience because people may go on living in homes and workplaces even after a fire. Here, of course, there were and are people living at 226 Loraine Avenue, and they and the owners of the property must be permitted to live their lives and conduct their affairs free from unbridled administrative discretion. Indeed, Inspector Doyle's testimony concerning his non-consensual foray into an unoccupied apartment is ample and eloquent testimony of the need for the safeguards provided in the Warrant Clause of the Fourth Amendment.

Certainly, the section of the Cincinnati Municipal Code allowing entry on private property cannot supersede the Constitution. Insofar as the city seeks to so apply it, it is unconstitutional.

Though the prosecution offered no formal memorandum, it did cite the case of *State, ex rel. Eaton,* v. *Price* (1958), 168 Ohio St. 123 [5 O.O.2d 377], which held that a similar Dayton ordinance, which allowed housing inspectors to make inspections of dwellings and "to enter, examine and survey at any reasonable hour" any dwelling, was a valid exercise of police power, and did not violate the United States or Ohio Constitutions. However, we do not find that case persuasive, and certainly its rationale has been superseded by later decisions of the United States Supreme Court.

For all of the above reasons, defendant's motion to suppress is granted, and all evidence obtained by Inspector Doyle through entry onto property of the defendant is suppressed.

*Motion to suppress granted.*