CITY OF WILLOUGHBY HILLS *v.* C. C. BARS, INC., D.B.A. SAHARA LOUNGE.

(No. 84 CRB 2000—Decided November 26, 1984.)

Willoughby Municipal Court.

*Byron & Cantor* and *David E. Cruikshank,* for plaintiff.

*Purola & Savage* and *Albert L. Purola,* for defendant.

CRANE, J. This matter came on to be heard pursuant to defendant's motion to suppress. Defendant seeks to suppress all evidence obtained during five separate inspections of the Sahara Lounge by members of the Willoughby Hills Fire Department. As a result of those five entries, citations for overcrowding were issued against defendant.

The parties stipulated that the Sahara Lounge is licensed by the state to sell and serve alcoholic beverages and that admission to this place is obtained through the paying of a cover charge. The city firemen obtained entrance to the lounge without a warrant and without paying the cover charge. Once inside the building, the firemen made a determination of the number of occupants which led to the within citations.

Testimony elicited at the hearing further established that four of the five visits in question were routine inspections and that the fifth was in response to a report of a possible fire. On the four routine visits, the officers were in uniform, identified themselves to the doorman and stated that they were present to conduct a fire safety inspection particularly in respect to the number of occupants. The firemen asked permission to proceed and the doorman said "Okay" and allowed the firemen to pass without paying the cover charge. On the occasion of the fire call, the firemen neither requested nor received permission to enter the lounge. The routine inspections were limited to the bar and dance floor area of the lounge, while the fire run resulted in an inspection of the entire building. While there was testimony as to the firemen's observation of the congested parking lot and line of customers waiting to gain admission, the firemen testified that they had no knowledge of the overcrowding conditions on the four routine inspections before entering the Sahara Lounge.

The city relied on three theories to justify the four routine inspections: consent, lack of any reasonable expectation of privacy, and that the lounge is part of a pervasively regulated industry. Defendant argued that these were administrative searches which necessitated warrants and that the cover charge created exclusivity and the expectation that the defendant would be free from such safety inspections.

A review of the city's authority regarding "pervasively regulated industries" leads this court, as later discussed, to the conclusion that this argument is but part and parcel of defining what is the reasonable expectation of privacy. See *United States* v. *Biswell* (1972), 406 U.S. 311; *Donovan* v. *Dewey* (1981), 452 U.S. 594.

Logically, the question of consent need not be decided since if there is no reasonable expectation of privacy, there is no right to be waived. However, the court is of the opinion that in the four routine inspections, the consensual requirements of *Schneckloth* v. *Bustamonte* (1973), 412 U.S. 218, were established. In the case of the fire call, the exigent circumstances of a possible fire made the entrance of the firemen *per se* reasonable. *Michigan* v. *Tyler* (1978), 436 U.S. 499.

Directing our attention to the expectation of privacy, there is no argument that firemen conducting an administrative inspection come within the purview of the state and federal Constitutions: *See* v. *Seattle* (1967), 387 U.S. 541. The real issue is whether the four routine safety inspections violate defendant's reasonable expectation of privacy for purposes of mandating the warrant procedures. The city properly phrased this issue as:

"Whether, in a public bar, the number of patrons occupying that tavern, is protected by the Fourth Amendment from observation by members of the fire department."

The test to be applied in answering this inquiry is whether defendant had a reasonable expectation of privacy. *Katz* v. *United States* (1967), 389 U.S. 347. While this test has been answered in the affirmative for commercial premises, this court finds no instance where a reasonable expectation of privacy was recognized in the public areas of that commercial property. The Supreme Court makes this distinction clear in *See* v. *Seattle, supra,* at 545:

"We therefore conclude that administrative entry, without consent, upon the portions of commercial premises which are *not open to the public* may only be compelled * * * within the framework of the warrant procedure. * * *" (Emphasis added.)

This reasoning was further stated in the landmark case of *Katz* v. *United States, supra,* at 351:

"What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."

Further clarification of this standard was recently enunciated by the Supreme Court in the "open fields" opinion of *Oliver* v. *United States* (1984), 80 L. Ed. 2d 214, at 228:

"* * * [T]he general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment."

Rather, the court directed our attention to the following, at 227:

"The test of legitimacy is not whether the individual chooses to conceal assertedly 'private' activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment."

In the instant cases, there can be no reasonable expectation that the number of patrons occupying the public areas of a tavern will be kept private. In fact, there is an inherent inconsistency in the attempt to equate or reconcile privacy as to the number of occupants within the setting of a public place of assembly.

Defendant's citations of *Marshall* v. *Barlow's, Inc.* (1978), 436 U.S. 307, and *Michigan* v. *Tyler, supra,* are distinguishable in that they involve areas which were not open to the public. Defendant also directs our attention to the Hamilton Municipal Court opinion of *Cincinnati* v. *Morris Investment Co., Inc.* (1982), 6 Ohio Misc. 2d 1. In *Morris,* the court was asked to decide whether a corporate owner of an apartment building had an expectation of privacy vis-a-vis the city building inspectors in the hallways and vacant apartments of that building. The court, at 3, held "that these areas are common only to tenants or their guests, not the public at large."

The reasoning in *Morris* is not appropriate insofar as the Sahara Lounge's bar and dance floor were open to the public, and in fact, the public was expressly invited for the benefit of defendant. Moreover, the purpose of the visit was expressly to determine if defendant was in compliance with an occupancy limit, a changing condition. Defendant has not attacked the appropriateness of the occupancy limit, and the court finds that such a limit is within the powers of the city to protect patrons from overcrowding, health and safety hazards.

Within the context of *Morris,* defendant argues that, by virtue of its cover charge, it exercised exclusivity vis-a-vis the public. If the fences and no trespassing signs existent in *Oliver* v. *United States, supra,* do not create a reasonable expectation of privacy, then this court does not find it reasonable to recognize that a cover charge demonstrates the societal concept of privacy. This court

finds that a cover charge is no different than an admission charge to a theater or concert; it is a means to enhance revenue, exercise control of potentially disorderly patrons, and to enforce the maximum occupancy limits imposed on places of public assembly. None of these objectives implies a goal of expectation of privacy.

As earlier noted, the city advanced the position that a public tavern which serves alcohol is a pervasively regulated business. *Colonnade Catering Corp.* v. *United States* (1970), 397 U.S. 72. The court's attention was also directed to the opinion in *Hurless* v. *Dept. of Liquor Control* (App. 1955), 73 Ohio Law Abs. 161, that a public tavern which serves alcohol pursuant to the state's statute implicitedly agrees to administrative inspections by virtue of those liquor control laws. Lastly, the court notes the statutory authority of a city to inspect by virtue of R.C. 3737.14. While this court recognizes that the Willoughby Hills Fire Department, while acting under statutory authority, is entitled to a presumption of constitutional regularity, the court is more disposed to view the statutory arguments as but further indicia that neither society nor a tavern owner would reasonably expect that the number of patrons in a public bar would or should be shielded from the observations of firemen whose recognized purpose is the protection of life and safety.

For the above-stated reasons, this court finds that defendant's motion is not well-taken.

*Motion to suppress denied.*