[Cite as *Brock v. Hamilton Cty. Bd. of Zoning Appeals*, 2025-Ohio-717.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| CHRISTOPHER BROCK, | : | APPEAL NO. C-240133 |
| | | TRIAL NO. A-2203746 |
| and | : | |
| LEANN BROCK, | : | |
| | | *O P I N I O N* |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| HAMILTON COUNTY BOARD OF ZONING APPEALS, | : | |
| Defendant-Appellee. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 5, 2025

*Christopher Brock* and *LeAnn Brock*, pro se,

*Connie M. Pillich*, Hamilton County Prosecuting Attorney, and *Eric A. Munas*, Assistant Prosecuting Attorney, for Defendant-Appellee.

Zayas, **Judge.**

**{¶1}** In this administrative appeal, plaintiffs-appellants Christopher and LeAnn Brock ("the Brocks") challenge the judgment of the Hamilton County Court of Common Pleas, which affirmed the decision of defendant-appellee the Hamilton County Board of Zoning Appeals ("the BZA") denying the Brocks' request for a zoning variance. For the reasons that follow, we affirm the judgment of the trial court.

### I.     Factual and Procedural History

**{¶2}** This case concerns the denial of the Brocks' request for a variance from the enforcement of Section 10-12.3 of the Hamilton County Zoning Resolution ("the Zoning Resolution") under Chapters 21 and 22 of the Zoning Resolution. The request pertained to the below pictured storage structure.



**{¶3}** Section 10-12.3 of the Zoning Resolution concerns the permissible location of a detached storage structure as an accessory to residential use. Section 10-12 provides, "Detached private garages, storage barns, portable carports and other detached structures, excluding 'portable storage containers' as regulated by Section 11-

4.8, shall be permitted as an accessory use in all Residential Districts or any district with permitted residential uses, in accordance with the [requirements listed in Section 10-12]." Section 10-12.3 then provides the following restriction, "No detached garage or storage barn shall be located in the front or side yard except as otherwise stipulated in Sections 10-3.1 and 10-3.3."

{¶4} The Brocks applied for a variance from Section 10-12.3 after their application for a zoning certificate was denied the previous day by the Hamilton County Zoning Plans Examiner under Section 10-12.3. The shed was already in existence at the time of the application. Of note, the variance request sought to permit a "shed in the front yard."

{¶5} The variance request came before the BZA at a hearing on July 13, 2022. At the hearing, the Brocks expressed that they built the shed where they did because they live "literally on a hill, so [their] whole back yard is a hill." They attempted to argue that the shed is not in their front yard because they have a nonstreet-facing front door on their home. They also argued that the shed is not at "street level," and that their "front yard" was the area of grass "up at the street level" where everyone can see. Additionally, they said that the shed is "exactly the same color as [their] house," and matches the style of their house. When asked if there was a way to move the shed, Mr. Brock said, "No, it would require at least a crane to even move it over our house." The Brocks also expressed that others in the neighborhood "have built attachments" and have "sheds behind their house[s]." They specifically mentioned a detached garage in the "back of" a property, and a shed under a porch "in the rear" of a house. Ultimately, Ms. Brock stated, "My point is, we're looking for a variance because we live on a hill. We built this shed, we need access to this shed. It matches our home. We tried to make it as beautiful as we could. We do not think it devalues the home value."

{¶6} Marsha and Roger Peter, neighbors who live across the street from the Brocks, spoke at the hearing about restrictive covenants on the property that supposedly prevent the shed. A member of the board told the Peters that, "we can't get involved in that," and that the board did not "deal with the covenants." The Peters further expressed at the hearing that they walk out of their front door and see "the top of [the Brocks'] shed," and it "upsets [them]." Mr. Peter said, "There are no other sheds in the whole subdivision." When asked why they did not like the shed, Mr. Peter said that it was because he did not like to look at the shed and Mr. Brock never asked permission to build the shed. Ms. Peter expressed their concern that other sheds would be built in the neighborhood as a result. She also said that the shed was out of character of the neighborhood and could affect their property value.

{¶7} James Scheibling, a nearby resident who lives on the same street, expressed at the hearing that he moved to the neighborhood because of the restrictive covenants and the type of community the covenants created. He opined that allowing a variance would change the neighborhood as new homeowners "are going to be looking to build sheds," which would "depreciate our properties, and take away from what the street looks like."

{¶8} John Niehaus, the developer of the neighborhood, expressed at the hearing that covenants were important because people purchased the properties in reliance on the restrictions. He then opined that there were different ways the shed could have been attached to the Brocks' house that would not have been a problem, such as connecting it to the end of the house as a "third car garage." He expressed that he was concerned about what allowing a variance would "do[] for everything down the line," and said there were no sheds in the development at all.

{¶9} At the conclusion of the hearing, the board members discussed the

standards for granting a variance and the consensus seemed to be that the Brocks could move the shed to the back yard, but allowing a variance would "out of character with the neighborhood." Accordingly, the BZA entered a resolution denying the request for a variance after finding that the literal enforcement of Section 10-12.3 would not result in practical difficulty for the Brocks, but the requested variation would seriously affect the adjoining property owners and the general welfare.

{¶10} The Brocks appealed the BZA's decision to the court of common pleas. After briefing and oral argument, the magistrate entered a decision affirming the decision of the BZA. In doing so, the magistrate found—among other things—that the BZA's "decision to deny the variance was not illegal, capricious, unreasonable or unsupported by the preponderance of the evidence in the record."

{¶11} The Brocks objected to the magistrate's decision, raising ten objections for review. After responsive briefing and an independent review of the record, the trial court entered a decision overruling the objections, adopting the magistrate's decision, and entering judgment in favor of the BZA. The Brocks now appeal.

## II. Analysis

{¶12} The Brocks now raise nine assignments of error for this court's review, alleging various errors in the proceedings below.

{¶13} "R.C. Chapter 2506 governs appeals to the court of common pleas from final orders of administrative officers and agencies of political subdivisions, including municipal boards of zoning appeals." *Cleveland Clinic Found. v. Bd. of Zoning Appeals*, 2014-Ohio-4809, ¶ 22. "R.C. 2506.04 governs the standard of review the trial court must apply in such an appeal." *Id.* "It provides that 'the court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and

probative evidence on the whole record.'" *Id*. "Thus, R.C. Chapter 2506 confers on the common pleas courts the power to examine the whole record, make factual and legal determinations, and reverse the board's decision if it is not supported by a preponderance of substantial, reliable, and probative evidence." *Id*. at ¶ 24, citing *Dudukovich v. Lorain Metro. Hous. Auth.*, 58 Ohio St.2d 202, 207 (1979).

**{¶14}** "The statute further provides that the court's judgment may be appealed by any party to the court of appeals 'on questions of law.'" *Id*. Thus, the court of appeals has a limited function. *Id*. at ¶ 23, quoting *Kisil v. Sandusky*, 12 Ohio St.3d 30, 34 (1984). "The standard of review for courts of appeals in administrative appeals is designed to strongly favor affirmance." *Id*. at ¶ 30. "It permits reversal only when the common pleas court errs in its application or interpretation of the law or its decision is unsupported by a preponderance of the evidence as a matter of law." *Id*.

**{¶15}** In other words, our review as an appellate court is narrow and focuses only on the decision of the court of common pleas. *See id*. at ¶ 27-28. Further, it is the appellant's burden on appeal to set forth an argument demonstrating alleged error(s) in the decision of the court of common pleas. *See* App.R. 16(A)(7); *see also, e.g., In re J.G.S.*, 2019-Ohio-802, ¶ 31 (1st Dist.), citing App.R. 16(A), and *State v. Brown*, 2013-Ohio-2720, ¶ 24 (1st Dist.) ("To be considered on appeal, errors by a trial court must be separately argued and supported by legal authority and citation to the record"). Thus, to prevail in an appeal under R.C. Ch. 2506, the appellant must set forth an argument demonstrating that the court of common pleas erred in its application or interpretation of law or that the decision of the court of common pleas was not supported by a preponderance of the evidence as a matter of law.

**{¶16}** We note that "[i]t is not the job of this court to develop or root through the record and relevant authorities to find support for a party's position." *Guthrie v.*

*Guthrie*, 2024-Ohio-5581, ¶ 12 (1st Dist.), citing *Olthaus v. Niesen*, 2023-Ohio-4710, ¶ 11 (1st Dist.).

### A. First Assignment of Error

**{¶17}** In the first assignment of error, the Brocks argue that the trial court "erred both in the application of legal standards for variances and in its failure to conduct a proper de novo review of the evidence as required under R.C. 2506.04." In support of this argument, the Brocks assert that the BZA's denial of the variance request demonstrates a "fundamental misapplication of the legal standards for variances" and that such an error was "compounded" by the trial court's failure to conduct an independent review of the evidence.

**{¶18}** Our review of the record reveals nothing to show that the trial court failed to conduct an independent review of the evidence.

**{¶19}** First, there is nothing in the record to show that the trial court failed to comply with its duty under Civ.R. 53 when reviewing the decision of the magistrate. *See, e.g., Hays v. Young ex rel. Young*, 2024-Ohio-3149, ¶ 30 (11th Dist.), citing *Hartt v. Munobe*, 67 Ohio St.3d 3, 5 (1993) ("[U]nless there is something contradictory in the record, this court will presume that the trial court complied with its duty under Civ.R. 53 to conduct an independent, de novo review of the magistrate's decision."). The trial court expressly stated that it reviewed not only the transcript of the zoning hearing, but also the evidence attached to the Brocks' filings in the trial court when reviewing the magistrate's decision. The Brocks have not pointed to anything in the record to suggest otherwise. *See Kasper Invest. Properties, LLC v. Put-In-Bay Twp. Bd. of Zoning Appeals*, 2015-Ohio-4628, ¶ 20 (6th Dist.) ("A party alleging error by the lower court under Civ.R. 53 has an affirmative duty to demonstrate that the trial court failed to conduct an independent review of the magistrate's findings.").

**{¶20}** Next, in addition to adopting the decision of the magistrate, the trial court's entry specifically referenced its standard of review under R.C. 2506.04 and held, after an independent review of the BZA transcript and the additional evidence filed by the Brocks, that the BZA's decision to deny the Brocks' variance request for "the front yard accessory structure" is affirmed. Thus, there is no indication that the trial court's review was not in conformance with R.C. 2506.04. *See City of Dayton v. Whiting*, 110 Ohio App.3d 115 (2d Dist. 1996).

**{¶21}** Beyond that, the Brocks argue that the BZA failed to apply the proper legal standard for variances when it issued its decision. To the extent that this argument asserts that the trial court erred in failing to find that the BZA's decision was illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence under R.C. 2506.04, the trial court found that the Brocks failed to state with specificity in their objections how the magistrate erred in finding that the BZA's decision was not improper under R.C. 2506.04. In other words, the trial court found that the Brocks' objection was not proper under Civ.R. 53(D)(3)(b)(ii). The Brocks have not asserted any error in this finding to this court.

**{¶22}** Further, the Brocks have failed to cite to the record in support of their argument as required under App.R. 16(A)(7). Therefore, the Brocks have failed to establish error in the trial court's decision. Consequently, the first assignment of error is overruled.

### B. Second Assignment of Error

**{¶23}** In the second assignment of error, the Brocks argue that the zoning inspector's warrantless entry onto a private drive to commence a zoning-enforcement action without a warrant, consent, or a signed written complaint violated their

8

constitutional protections against unreasonable searches and seizures. In doing so, they point to case law establishing that an administrative search is subject to constitutional protections against unreasonable searches when conducted for the purpose of an enforcement action. *See generally Camara v. Mun. Court of San Francisco*, 387 U.S. 523 (1967), and *City of Cincinnati v. Morris Invest. Co.*, 6 Ohio Misc.2d 1 (M.C. 1982).

{¶24} The trial court found that the Brocks' constitutional protections against unreasonable searches and seizures were not implicated in this case as the matter before the court was simply the denial of a variance request, and not an enforcement action. The Brocks do not assign any specific error to this finding. Rather, they argue—in a conclusory manner—that the "entire judicial process" was born out of an illegal search of their property. However, in doing so, they fail to cite to the record in support of their argument, and do not even identify the precise incident from which they are claiming an improper search.

{¶25} The record—which is limited to the variance request—indicates that someone from the county (John Huth) went to the property to take pictures after Mr. Brock consented to him doing so. More specifically, emails in the record show that, on July 5, John Huth from the county emailed Mr. Brock to ask questions about the shed for the purposes of the variance report and let Mr. Brock know he would be out the following day to take pictures for the report. In response, Mr. Brock said, "We should be home but feel free to take pictures and use the property as needed for pictures." Thus, Mr. Brock consented to Mr. Huth coming to the property to take pictures. Beyond that, the record does not indicate that anyone from the county went to the property for any other purpose in relation to the variance request.

{¶26} Consequently, we see nothing in the record before us to support the

Brocks' argument. Therefore, we overrule the second assignment of error.

### C. Third Assignment of Error

{¶27} In the third assignment of error, the Brocks argue that the trial court failed to recognize the significance of a township-designation error in the denial of the zoning certificate as the error resulted in "misapplication of the zoning laws."

{¶28} The trial court found that the township-designation error did not provide a basis for reversal of the BZA's decision where the denial of the variance request correctly identified the property as being located in Miami Township and the Brocks failed to show that the BZA applied the incorrect zoning regulations when denying their variance request.

{¶29} While the Brocks now argue that the error resulted in "misapplication of the zoning laws," they fail to point to any specific zoning provision that was misapplied in support of this argument. "An appellate court will not create an argument in support of an assignment of error where an appellant fails to develop one." *Fontain v. Sandhu*, 2021-Ohio-2750, ¶ 15 (1st Dist.).

{¶30} The record indicates that the BZA recognized throughout the proceedings that the property was in Miami Township and there is no indication that the BZA relied on any improper provisions in the Zoning Resolution when issuing its decision. Consequently, the record does not demonstrate any error in the trial court's finding on this issue. Therefore, because the Brocks have failed to show error in the trial court's decision, we overrule the third assignment of error.

### D. Fourth Assignment of Error

{¶31} In the fourth assignment of error, the Brocks argue that the "zoning personnel" failed to provide a professional recommendation in the staff report for the BZA under Section 17-4.4 of the Zoning Resolution.

**{¶32}** To the extent that this argument asserts error in the trial court's decision, the Brocks failed to raise this issue in their objections to the magistrate's decision. Therefore, they have waived all but plain error in relation to this argument. *See* Civ.R. 53(D)(3)(b)(iv). "[I]n appeals in civil cases, the plain error doctrine is not favored and may only be applied in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself." *Goldfuss v. Davison*, 79 Ohio St.3d 116, 122-123 (1997).

**{¶33}** Section 17-4.4 of the Zoning Resolution is applicable to conditional-use applications, not applications for a zoning variance. Accordingly, the Brocks have failed to show error, let alone plain error, in the trial court's decision. Consequently, we overrule the fourth assignment of error.

### E. Fifth Assignment of Error

**{¶34}** In the fifth assignment of error, the Brocks argue that (1) the BZA violated the rules of evidence during the hearing by allowing evidence that "directly contradicts" other evidence and their own testimony, (2) the BZA improperly allowed restrictive covenants to influence its decision, (3) the BZA failed to investigate contradictory evidence, and (4) the trial court erred by failing to "rectify these errors." However, in making these arguments, the Brocks failed to cite to the record or any legal authority in support of their argument as required under App.R. 16(A)(7). "An appellate court will not create an argument in support of an assignment of error where an appellant fails to develop one." *Fontain*, 2021-Ohio-2750, at ¶ 15 (1st Dist.). Consequently, because the Brocks have failed to develop an argument showing error in the trial court's decision, we overrule the fifth assignment of error.

### F. Sixth Assignment of Error

**{¶35}** In the sixth assignment of error, the Brocks argue that the BZA's decision was improper under R.C. 2506.04. In doing so, they fail to assign any specific error to the trial court's decision. Further, to the extent that they argue that the trial court erred in affirming the decision of the BZA under R.C. 2506.04, they fail to cite to the record or any legal authority in support of their argument as required under App.R. 16(A)(7). Consequently, because the Brocks have failed to develop an argument showing error in the trial court's decision, we overrule the sixth assignment of error.

### G. Seventh Assignment of Error

**{¶36}** In the seventh assignment of error of error, the Brocks argue that they were not provided with "post-hearing documentation" that impacted their opportunity for a fair and meaningful opportunity for a judicial review. However, they fail to identify what posthearing information they did not receive, fail to cite to the record, and fail to cite to any legal authority in support of their position. "The appellant bears the burden to provide legal and factual support for arguments that [he or ]she brings before this court, as prescribed by the Ohio Rules of Appellate Procedure and our local appellate rules." *Guthrie*, 2024-Ohio-5581, at ¶ 12 (1st Dist.), citing App.R. 16(A)(7) and Loc.R. 16.1(A)(3)(c) and (4). Because the Brocks have failed to develop an argument showing error in the trial court's decision, we overrule the seventh assignment of error.

### H. Eighth Assignment of Error

**{¶37}** In the eighth assignment of error, the Brocks argue that the trial court erred by failing to recognize and address the "extensive misconduct by both the county's legal team and the judiciary, which created a prejudicial and coercive

environment that violated the Brocks' constitutional rights and compromised the integrity of the judicial process." They assert nine areas of alleged error.

**{¶38}** First, they assert that the trial court failed to address the prejudicial impact of "dual prosecutions." They argue, "The dual prosecution strategy created an unfair and coercive legal environment, forcing the Brocks to defend themselves in multiple forums at the same time, thereby violating principles of due process and fairness."

**{¶39}** Second, they assert that the trial court failed to address the failure to stay criminal proceedings. They argue, "The escalation of criminal charges, particularly given the administrative nature of the underlying issues, represents a clear overreach of prosecutorial discretion and a violation of judicial economy."

**{¶40}** Third, they assert that the trial court failed to address the denial of fair trial rights. They argue, "The simultaneous proceedings burdened the Brocks, inhibiting their ability to mount a full and fair defense in both the criminal and administrative cases, thus violating their fundamental rights."

**{¶41}** Fourth, they assert that the trial court failed to address the "chilling effect" on their case. They argue, "The coercive nature of the dual prosecutions, along with the looming threat of criminal penalties, stifled their advocacy and violated their First Amendment rights to petition the government for redress of grievances."

**{¶42}** Fifth, they assert that the trial court failed to address the "dismissal of [the] baseless criminal case." They argue, "The dismissal highlights the prosecutorial overreach and the lack of the criminal charges, which should have been acknowledged by the Court of Common Pleas, warranted the granting of the zoning permit and/or variance."

**{¶43}** Sixth, they assert that the trial court failed to address the "persistent

filing of meritless motions and technical maneuvers." They argue, "The county engaged in a pattern of filing flawed documentation and meritless motions designed to delay proceedings and evade addressing the substantive issues of the Brocks' case."

**{¶44}** Seventh, they assert that the trial court failed to address the "bias and misrepresentation by [BZA] legal counsel." They argue, "The [BZA] legal counsel's false representations in their Merit Brief introduced bias and undermined the impartial consideration of the Brocks' case."

**{¶45}** Eighth, they assert that the trial court failed to address the "judicial misconduct and delay." They assert that the magistrate's decision was untimely and lacked "proper jurisprudential consideration, suggests an appearance of impropriety and potential bias, further undermining the fairness of the proceedings."

**{¶46}** Last, they assert that the trial court failed to address the "cumulative violation of due process and judicial economy." They argue, "The county's dilatory tactics unnecessarily prolonged the proceedings, undermining the efficient administration of justice and creating a prejudicial environment that materially impacted the Brocks' ability to receive fair consideration of their case."

**{¶47}** All these arguments were only asserted in conclusory manner. The Brocks failed to cite to the record or any legal authority in support of any of their arguments as required under App.R. 16(A)(7).

**{¶48}** In essence, the Brocks seem to take issue with the criminal citation that appears to have been issued for violating the zoning resolution. The only evidence in the record pertaining to the criminal case is a minor-misdemeanor citation for installation of the shed in violation of the zoning resolution and a judge's sheet that shows that the case was ultimately dismissed for want of prosecution. The citation appears to have been issued a couple of months after the variance was denied.

**{¶49}** The trial court found that the criminal case was beyond the scope of the administrative proceedings, and the Brocks do not assert any argument for why this finding was in error. Because the Brocks failed to form any argument as to why the trial court erred in finding that the criminal proceedings were beyond the scope of the administrative appeal before the court and failed to form any argument as to any other reason why the trial court erred in its application or interpretation of the law, we overrule this assignment of error.

## I. Ninth Assignment of Error

**{¶50}** In the ninth and final assignment of error, the Brocks argue that the trial court "failed to recognize and consider the Brocks' protected status as members of the Native American Piqua Shawnee tribe of Alabama," resulting in a violation of equal protection and a disregard of federal and state "legal frameworks that afford special considerations to Native American citizens."

**{¶51}** The trial court found, on objections, that the Brocks "neither state what provision in the Northwest Ordinance gives them special consideration in zoning requests or how application of that Federal law would result in a different outcome in front of the BZA." In other words, the trial court found that the Brocks' objection was not proper under Civ.R. 53(D)(3)(b)(ii). The Brocks have not asserted any argument as to why this finding was improper.

**{¶52}** Further, the Brocks have failed to cite to the record in support of their argument as required under App.R. 16(A)(7). Consequently, because the Brocks have failed to develop an argument that contains citations to the relevant parts of the record, they have failed to show error in the trial court's decision. Therefore, we must overrule the final assignment of error.

15

### *III.    Conclusion*

**{¶53}** For all the foregoing reasons, we overrule the assignments of error and affirm the judgment of the trial court.

**{¶54}** We note the Brocks expressed frustration at oral argument with issues being resolved on procedural grounds.  Unfortunately, although we understand their frustration, pro se litigants are "required to comply with the rules of practice and procedure just like members of the bar." *Fontain*, 2021-Ohio-2750, at ¶ 13 (1st Dist.), citing *Curry v. Mansfield*, 2020-Ohio-4125, ¶ 6 (5th Dist.).

Judgment affirmed.

**KINSLEY, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.